**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Sanchez Energy Corporation, et. al., | § | Case No. 19-34508 |
| | § | |
| Reorganized Debtors.[1] | § | (Jointly Administered) |
| | § | |
| | § | |
| Carnero G&P, LLC | § | Adversary No. 21-03908 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SN EF UnSub LP, Eagle Ford TX LP, Venado EF L.P., Mitsui E&P Texas LP, and Mesquite Energy, Inc., | § § § | |
| | § | |
| Defendants. | § | |

**Adversary Plaintiff's Motion to Remand to State Court or for Abstention**

(Related to Doc. No. 1)

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

.

[1] The "Reorganized Debtors," along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102) (now known as Mesquite Energy, Inc.); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Reorganized Debtors' service address is 700 Milam Street, Suite 600, Houston, Texas 77002.

# Table of Contents


Summary of the Relief Requested ........ 1

Background ........ 2

Argument ........ 4

I. The Court lacks jurisdiction under 28 U.S.C. § 1334(b) to hear the claims in the State Court Lawsuit. ........ 4

A. The Court's post-confirmation jurisdiction is limited to matters pertaining to the implementation or execution of the Plan, which is assessed under the Craig's Stores' three-factor test. ........ 6

B. The Craig's Stores factors do not support jurisdiction over Carnero's claims. ........ 8

1. The State Court Lawsuit deals with the post-confirmation relations between the parties under assumed contracts. ........ 8

2. The claims in the State Court Lawsuit were not pending as of the Plan confirmation date. ........ 9

3. No facts or law deriving from the reorganization or Plan are necessary to decide Carnero's claims. ........ 9

II. The factors applicable to 28 U.S.C. 1334(c)(2) support mandatory abstention. ........ 11

A. Carnero has timely filed this motion for abstention and its claim is based on state law. ........ 12

B. Carnero's claims have no independent basis for federal jurisdiction other than Section 1334(b). ........ 12

C. Carnero's claims are non-core. ........ 12

D. Carnero filed its claims in the State Court Lawsuit. ........ 13

E. The state court can timely adjudicate Carnero's claims. ........ 13

III. The factors applicable to 28 U.S.C. § 1334(c)(1) overwhelmingly favor permissive abstention. ........ 14

A. The permissive abstention factors. ........ 14

B. The balance of the factors favors permissive abstention. ........ 16

1. The effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention. ........ 16

2. The extent to which state law issues predominate over bankruptcy issues. ........ 16

3. The difficult or unsettled nature of applicable law. ........ 16

4. The presence of related proceeding commenced in state court or other nonbankruptcy proceeding. ........ 17

5. The jurisdictional basis, if any, other than § 1334. ........ 17

6. The degree of relatedness or remoteness of proceeding to the main bankruptcy case. ........ 17




13021737

7. The substance rather than the form of an asserted core proceeding. .................. 18

8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. .......................................................................... 18

9. The burden on the bankruptcy court's docket. ................................................ 18

10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties ................................................ 18

11. The existence of a right to a jury trial. ........................................................... 19

12. The presence in the proceeding of nondebtor parties. ...................................... 19

13. Comity. ........................................................................................................ 19

14. The possibility of prejudice to other parties in the action. ................................ 20

Conclusion .............................................................................................................. 20

## Table of Authorities

**Cases**

*In re Austin Development Co.*, 19 F. 3d 1077 (5th Cir. 1994)................................................7, 11

*In re Craig's Stores of Tex., Inc.*, 266 F.3d 388 (5th Cir. 2001)...............................7, 8, 11, 12, 16

*In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813 (Bankr. S.D. Tex. 2006).....................................16

*In re Encompass Services Corp.*, 337 B.R. 864 (Bankr. S.D. Tex. 2006), *aff'd*, No. ADV. 02-43582-11, 2006 WL 1207743 (S.D. Tex. May 3, 2006)...............................................................9

*Matter of Galaz,* 841 F.3d 316 (5th Cir. 2016)........................................................................7, 10

*Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 589 (5th Cir. 2008) ........................................................................................10

*In re Hous. Reg'l Sports Network, L.P.*, 547 B.R. 717 (S.D. Tex. 2016) .......................................7

*In re Mugica,* 362 B.R. 782 (Bankr. S.D. Tex. 2007)..................................................................12

*In re Petroleum Products & Services, Inc.*, 561 B.R. 662 (Bankr. S.D. Tex. 2016) ...............12, 13

*Reliant Exploration Creditors' Tr. v. Opus Oil & Gas LP (In re Reliant Expl. Ltd.),* 336 B.R. 286, 290 (Bankr. S.D. Tex. 2005)...........................................................................................5

*In re SBMC Healthcare, LLC*, 519 B.R. 172 (Bankr. S.D. Tex. 2014), *aff'd*, No. AP 14-03126, 2017 WL 2062992 (S.D. Tex. May 11, 2017)..............................................15, 16, 17, 18, 19, 20

*In re Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008) .................................................11

*Smith v. Bank of Am. Corp.*, 605 Fed. Appx. 311 (5th Cir. 2015)....4, 12

*Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 930 (5th Cir. 1999)....13

*In re Treyson Dev., Inc.*, No. 14-70256, 2016 WL 1604347 (Bankr. S.D. Tex. Apr. 19, 2016)...12

*In re Ultra Petroleum Corp.*, No. 16-32202, 2019 WL 2524936 (Bankr. S.D. Tex. Jan. 9, 2019), *report and recommendation adopted*, No. 4:19-CV-00090, 2019 WL 2524704 (S.D. Tex. Feb. 25, 2019)....9

*In re Wood*, 825 F.2d 90 (5th Cir.1987)....15

*Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995)....4, 5

**Statutes**

28 U.S.C. §§ 157(b)(1)....12

28 U.S.C. § 1334(b)....2, 4, 7, 12, 19,20

28 U.S.C. § 1334(c)....1, 2, 4, 11, 14, 21

28 U.S.C. § 1452(b)....1, 2

Tex. Civ. Prac. & Rem. Code Ch. 37....2, 3, 16

**Rules**

Fed. R. Bankr. P. 5011(b)....1

Fed. R. Bankr. P. 9014....1

Bankr. Local Rule 9013-1....1

Under 28 U.S.C. § 1452(b), 28 U.S.C. § 1334(c), Rules 5011(b) and 9014 of the Federal Rules of Bankruptcy Procedure, and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas, Adversary Plaintiff Carnero G&P LLC ("Carnero") files this Motion to Remand to State Court or for Abstention to return this case to the 269th Judicial District Court, Harris County, Texas:

## Summary of the Relief Requested

1. This suit arises out of contracts between Carnero and non-debtors SN EF UnSub LP ("UnSub"), Eagle Ford TX LP ("Eagle Ford"), Venado EF L.P. ("Venado"), Mitsui E&P Texas LP ("Mitsui") (collectively, "WIPs"), and reorganized debtor Mesquite Energy, Inc. ("Mesquite")[2] (formerly known as Sanchez Energy Corporation) (collectively, the WIPs and Mesquite are the "Defendants"). Those contracts are as follows:

- April 1, 2018 Firm Gas Gathering, Processing and Purchasing Agreement ("GGPA") between Carnero and SN EF Maverick, LLC ("Maverick"), as amended by Carnero, the WIPs and Maverick, **Exhibit 1**;
- April 1, 2018 Ratification Agreements among Carnero, Maverick, UnSub, Eagle Ford, and Venado ratifying the GGPA ("Ratification Agreements"), **Exhibits 2-4**;
- April 1, 2018 Letter Agreement among Carnero, Maverick, and Mitsui regarding the GGPA ("Letter Agreement"), **Exhibit 5**.

2. The Reorganized Debtors assumed all of these contracts (collectively, the "Assumed Contracts"). Post-confirmation, Carnero filed a lawsuit in state court against the Defendants as Cause No. 2021-46431 in the 269th Judicial District Court, Harris County, Texas ("State Court Lawsuit"). In the lawsuit, the sole relief that Carnero seeks is a declaratory judgment

---

2 Carnero recognizes that it may have misidentified Mesquite as the correct contract counterparty on the contracts that are the subject of this dispute. Carnero intends to correct this issue by amending its petition. For purposes of this Motion, it does not change the analysis that remand or abstention is warranted. Both Mesquite and Maverick are Reorganized Debtors.

under Texas Civil Practice and Remedies Code Chapter 37 regarding the parties' rights and obligations under the Assumed Contracts. The Defendants removed the case to this Court based on purported bankruptcy jurisdiction under 28 U.S.C. § 1334(b). But the State Court Lawsuit raises only matters of post-confirmation contract interpretation under state law that do not relate to implementation or execution of the Reorganized Debtors' plan of reorganization. This Court should remand this case to the state court or abstain for three reasons: (i) the Court lacks post-confirmation subject matter jurisdiction over Carnero's state court claim under 28 U.S.C. § 1334(b); (ii) the factors applicable to 28 U.S.C. § 1334(c)(2) require mandatory abstention; and (iii) the factors applicable to 28 U.S.C. § 1334(c)(1) favor permissive abstention and equitable remand pursuant to 28 U.S.C. § 1452(b).

## Background

3. The Reorganized Debtors filed their Chapter 11 petitions on August 11, 2019. [Case No. 19-34508, Dkt. 1].

4. The Court entered its Order Approving Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan or Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates (the "Plan") on April 30, 2020. [Case No. 19-34508, Dkt. 1212].

5. On June 17, 2020, the Reorganized Debtors filed their Notice of Filing of Fourth Amended Exhibits B and C of the Plan Supplement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates listing the contracts they rejected and assumed. [Case No. 19-34508, Dkt. 1326]. The assumed contracts include the GGPA, the Ratification Agreements, other than UnSub's Ratification Agreement, and the Letter Agreement. [*Id*. at PDF p. 194].

6. On June 30, 2020, the Plan became effective.[Case No. 19-34508, Dkt. 1417].

7. On June 28, 2021, the Court entered the Stipulation of Dismissal and Agreed Order resolving the adversary proceeding Case No. 20-03197 filed by GSO ST Holdings LP, GSO ST Holdings Associates LLC, SN EF UnSub GP, LLC, and SN EF UnSub, LP against Sanchez Energy Corporation, SN EF Maverick, LLC, SN UR Holdings, LLC and Carnero G&P LLC. [Case No. 19-34508, 1983]. Through this order, the Reorganized Debtors assumed the UnSub Ratification Agreement and rejected the Marketing Agreement (defined below).

8. On July 30, 2021, Carnero filed the State Court Lawsuit against the Defendants seeking declarations under Texas Civil Practice and Remedies Code Chapter 37 regarding the parties' rights and obligations under the Assumed Contracts. [Dkt. 1-4]. The Assumed Contracts relate to oil and gas assets referred to as the "Comanche Assets." The GGPA contains terms requiring the Defendants to deliver gas from the Comanche Assets to Carnero in certain circumstances. The declarations Carnero seeks include the parties' rights and obligations under the Assumed Contracts and how those rights and obligations may be affected by certain other contracts that currently cause the gas from the Comanche Assets to be delivered to gas gatherers, processors, and purchasers other than Carnero. Those other contracts include:

(i) a rejected Hydrocarbons Purchase and Marketing Agreement ("Marketing Agreement") between UnSub and Maverick dated January 12, 2017 [Case No. 19-34508, Dkt. 1373]; and

(ii) an executory Retained Midstream Contracts Services Agreement, by and between Maverick, on the one hand, and Anadarko E&P Onshore, LLC, and Kerr-McGee Oil & Gas Onshore LP, on the other, and Mesquite as guarantor dated on or about June 1, 2017 ("Midstream Agency Agreement") [Case No. 19-34508, Dkt. 1544-2], which the Reorganized Debtors have not yet rejected or assumed.

9. Carnero does not seek any declarations ***under*** the Marketing Agreement or the Midstream Agency Agreement, and it cannot seek such declarations because it is not a party to either. Carnero also does not seek any declarations ***under*** the Bankruptcy Code, the Plan, any order

of this Court, or any other contract to which the Reorganized Debtors are parties other than the Assumed Contracts. Carnero does not seek to require the Reorganized Debtors to assume or reject any executory contract, including the Midstream Agency Agreement, or to interfere with this Court's determination of the assumption/rejection question for any executory contract under its prior orders.

10. On September 10, 2021, the Defendants filed the Notice of Removal of the State Court Lawsuit to this adversary proceeding. [Dkt. 1]. The only stated basis for jurisdiction is 28 U.S.C. § 1334(b).

## Argument

11. The Court should remand this adversary proceeding to the state court for three reasons. First, under 28 U.S.C. § 1334(b) this Court lacks jurisdiction to hear Carnero's state law contract interpretation claim under the Assumed Contracts. Second, the factors applicable to 28 U.S.C. § 1334(c)(2) support mandatory abstention. Third, the factors applicable to 28 U.S.C. § 1334(c)(1) overwhelmingly favor permissive abstention and remand.

### I. The Court lacks jurisdiction under 28 U.S.C. § 1334(b) to hear the claims in the State Court Lawsuit.

12. To sustain removal of the State Court Action to the Bankruptcy Court, the Defendants bear the burden to show this Court has subject matter jurisdiction over Carnero's state law claim for declaratory relief under the Assumed Contracts. *See Smith v. Bank of Am. Corp.*, 605 Fed. Appx. 311, 313 (5th Cir. 2015) ("The removing party bears the burden of establishing both the existence of federal subject-matter jurisdiction and the propriety of removal."). This burden cannot be satisfied by pointing to allegations that merely share something in common with the Reorganized Debtors' bankruptcy. *See Matter of Zale Corp.*, 62 F.3d 746, 753 (5th Cir. 1995) ("Shared facts between the third-party action and a debtor-creditor conflict do not in and of

themselves suffice to make the third-party action 'related to' the bankruptcy."). "Merely because an action may share common facts with a bankruptcy does not confer 'related to' jurisdiction on the Court." *Reliant Exploration Creditors' Tr. v. Opus Oil & Gas LP (In re Reliant Expl. Ltd.)*, 336 B.R. 286, 290 (Bankr. S.D. Tex. 2005); *see also Zale Corp.*, 62 F.3d at 753.

13. The Defendants ground their argument for this Court's jurisdiction on declarations sought in the State Court Lawsuit petition (Dkt. 1-4) at ¶¶ 36(j)-36(l). They allege (paraphrased) that Carnero:

- seeks declarations that if the Midstream Agency Agreement is rejected, that rejection may require delivery of gas to Carnero under the Assumed Contracts (Removal ¶ 21);
- seeks declarations that the Assumed Contracts may require Mesquite to continue to pursue rejection of the Midstream Agency Agreement (*Id.* ¶ 22);
- seeks declarations of the parties' rights and obligations under the Assumed Contracts as a matter of bankruptcy law (*Id.* ¶ 23);
- seeks declarations that Mesquite is obligated to pursue rejection of the Midstream Agency Agreement under 11 U.S.C. § 365 (*Id.* ¶ 24) and to preclude Mesquite from withdrawing its rejection of the Midstream Agency Agreement (*Id.* ¶ 31);
- seeks declarations regarding the rejection or assumption of certain executory contracts under the Bankruptcy Code (*Id.* ¶ 29); and
- seeks to preempt an order from this Court on the impact of any rejection of the Midstream Agency Agreement (*Id.*) by attempting to interfere with the Bankruptcy Court's determinations regarding the rejection or assumption of certain executory contracts. *Id.* ¶ 31.

14. The Defendants misstate Carnero's allegations. Carnero's actual allegations, excerpted below and taken as pled, demonstrate that, in this post-confirmation dispute, Carnero seeks only state court relief under the Assumed Contracts:

(j) After the rejection of the Marketing Agreement under 11 U.S.C. Section 365,

i). UnSub and UnSub's gas from the Comanche Assets continues to be subject to the obligations set forth in the GGPA and the Ratification Agreement; and

ii). UnSub must deliver UnSub's gas from the Comanche Assets to Carnero for gathering, processing, and purchase under the terms of the GGPA and the Ratification Agreement.

(k) The GGPA and the respective Ratification Agreements obligate Mesquite, UnSub, Eagle Ford, and Venado to terminate their delivery obligations under the Existing Commitments at the earliest possible time, which would include, among other actions, Mesquite pursuing rejection of the Midstream Agency Agreement under 11 U.S.C. Section 365.

(l) After rejection of the Midstream Agency Agreement under 11 U.S.C. Section 365,

i. Mesquite, UnSub, Eagle Ford, and Venado and their gas from the Comanche Assets automatically become and remain subject to the obligations set forth in the GGPA and the Ratification Agreement;

ii. Mesquite, UnSub, Eagle Ford, and Venado must deliver the gas from the Comanche Assets to Carnero for gathering, processing, and purchase under the terms of the GGPA and the respective Ratification Agreements; and

iii. Mitsui's gas from its interest in the Comanche Assets automatically becomes and remains subject to the obligations set forth in the GGPA and the Letter Agreement.

In these three paragraphs, Carnero seeks declarations to resolve a post-confirmation dispute with Mesquite/Maverick and the four non-debtor WIPs only under the various Assumed Contracts—not under the Bankruptcy Code, not under the Plan, not under any order entered by the Bankruptcy Court, and not under any executory contract yet to be assumed or rejected. The Defendants must fit these claims into the Court's post-confirmation jurisdiction. They cannot carry that burden.

***A. The Court's post-confirmation jurisdiction is limited to matters pertaining to the implementation or execution of the Plan, which is assessed under the Craig's Stores' three-factor test.***

15. The Bankruptcy Court is a court of limited jurisdiction. Its jurisdiction extends to "'all civil proceedings arising under title 11, or arising in or related to cases under title 11,'" *In*

*Matter of Galaz,* 841 F.3d 316, 322 (5th Cir. 2016) (quoting 28 U.S.C. § 1334(b)). Once the court confirms a debtor's chapter 11 plan of reorganization, however, that jurisdiction ceases to exist, other than for "matters pertaining to the *implementation or execution* of the plan." *In re Craig's Stores of Tex., Inc.,* 266 F.3d 388, 390 (5th Cir. 2001). The Court confirmed the Reorganized Debtors' Plan on April 30, 2020, and the Plan went effective on June 30, 2020 [Case 19-34508, Dkt. 1417], so the Court's jurisdiction is the more narrow post-confirmation jurisdiction standard described in *Craig's Stores*.

16. While the Plan contains retention of jurisdiction language (*see* Plan at Art. XI; Confirmation Order, ¶ 43), the source of subject matter jurisdiction for the Bankruptcy Court post-confirmation is solely 28 U.S.C. § 1334. *See In re Hous. Reg'l Sports Network, L.P.,* 547 B.R. 717, 735 (S.D. Tex. 2016). Neither the Plan nor the Court can create jurisdiction where it does not exist. Similarly, the Midstream Settlement Approval Order (Dkt. 1415) (as defined in the Notice of Removal) cannot create subject matter jurisdiction where it does not exist. That order provides that "[a]s part of the implementation and execution of the Plan, this Court shall retain jurisdiction with respect to all matters arising from or related to…this Order." (*Id.* at 4.) That is the same scope of jurisdiction stated in *Craig's Stores*.

17. Important here, the parties' rights and obligations under Assumed Contracts post-confirmation—after contracts have been assumed or rejected—are matters of contract interpretation under state law and do not relate to the implementation or execution of the Plan or any order. *See Craig's Stores*, 266 F.3d at 390; *see also In re Austin Development Co.*, 19 F. 3d 1077, 1084 (5th Cir. 1994) (holding that after lease was rejected, cause of action for breach of lease "should be decided in state court" because "the debtor's estate had no remaining interest in

the outcome of that controversy, which is not 'related to' the bankruptcy as is required for federal jurisdiction").

18. The Fifth Circuit addressed a post-confirmation dispute concerning performance under an assumed contract in *Craig's Stores*. There, 18 months after the court confirmed debtor Craig's Stores' plan of reorganization, Craig's Stores sued a bank in bankruptcy court asserting state law claims based on a contract it had assumed. *Craig's Stores*, 266 F.3d at 390. The court determined the bankruptcy court lacked jurisdiction over the claim based on three factors: (1) it "dealt with post-confirmation relations between the parties," (*even though* "the contract existed throughout the reorganization and was, by implication, assumed") with (2) "no antagonism or claim pending between the parties as of the date of reorganization" and (3) "no facts or law deriving from the reorganization or plan was necessary" to Craig's Stores' claims. *Id*. at 391. Instead, reorganized Craig's Stores was "capable of sailing forth in the cold, cruel business world with no longer the protective wraps of the federal Bankruptcy Court" and could not "come running to the bankruptcy judge every time something unpleasant happens." *Id*. at 390-91 (internal quotations omitted). Considering the three *Craig's Stores* factors, the Court lacks jurisdiction over Carnero's claim.

### *B. The* **Craig's Stores** *factors do not support jurisdiction over Carnero's claims.*

1. <u>The State Court Lawsuit deals with the post-confirmation relations between the parties under assumed contracts.</u>

19. Mesquite/Maverick has suffered something unpleasant post-confirmation: Carnero has sued it and the four non-debtor WIPs seeking declaratory relief regarding a dispute that has arisen post-confirmation out of the Assumed Contracts. Specifically, the dispute relates to the Defendants' obligations under the Assumed Contracts *since their assumption* to deliver gas from the Comanche Assets to Carnero and to terminate, at the earliest possible time, any prior delivery

obligation that sends that gas to others. The dispute does not arise out of obligations imposed on Mesquite/Maverick by the Plan, but by the Assumed Contracts, and those contracts were not created by the Plan. *See In re Encompass Services Corp.*, 337 B.R. 864, 875 (Bankr. S.D. Tex. 2006), *aff'd*, No. ADV. 02-43582-11, 2006 WL 1207743 (S.D. Tex. May 3, 2006). The dispute, thus, relates to the post-confirmation relations of the parties under the terms of the Assumed Contracts.

2. <u>The claims in the State Court Lawsuit were not pending as of the Plan confirmation date.</u>

20. The Court confirmed the Plan on April 30, 2020. This dispute arose 15 months later when Carnero filed the State Court Lawsuit on July 30, 2021. Carnero's claims may share some common facts with the bankruptcy proceeding because Carnero seeks declarations under contracts the Reorganized Debtors assumed, but that is not enough to establish that the claims could affect the implementation or execution of the Plan. *See In re Ultra Petroleum Corp.*, No. 16-32202, 2019 WL 2524936, at *7 (Bankr. S.D. Tex. Jan. 9, 2019), *report and recommendation adopted*, No. 4:19-CV-00090, 2019 WL 2524704 (S.D. Tex. Feb. 25, 2019) (holding that common facts and circumstances between pre-confirmation complaint against debtor and debtor's post-confirmation counterclaim against different party were insufficient to establish "related to" jurisdiction under narrow post-confirmation jurisdictional standard). As in *Craig's Stores*, the dispute in the State Court Lawsuit arose only *after* the Assumed Contracts were assumed.

3. <u>No facts or law deriving from the reorganization or Plan are necessary to decide Carnero's claims.</u>

21. The state court can decide Carnero's claims without facts or law deriving from Mesquite/Maverick's reorganization, the Plan, or any order of this Court, and without reference to the Bankruptcy Code. Indeed, the Plan does not address resolving disputes concerning the Reorganized Debtors' rights and obligations under assumed contracts. Instead, the Plan creates

procedures for the assumption, assignment, and rejection of Executory Contracts (*see* Plan at Art. V.A.), a claims process for rejected contracts (*see id.* at Art. V.B.), and a cure process for assumed contracts (*see id.* at Art. V.C.). The Plan further addresses the scope of assumption and allows the Reorganized Debtors to alter their treatment of a contract following the resolution of certain disputes not at issue. *See* Plan at Art.V.F., Art. V.H. Resolving a dispute as to the Reorganized Debtors' rights and obligations under the Assumed Contracts does not impact compliance with the Plan or its completion. *See, e.g., Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 589 (5th Cir. 2008) (recognizing that "jurisdiction extends to matters that 'impact compliance with or completion of the reorganization plan'" and finding no jurisdiction where litigation at issue did not attempt to subvert confirmed plan).

22. While a bankruptcy court retains jurisdiction to interpret and enforce its own prior orders (*Galaz*, 665 Fed. Appx. at 376), Carnero's claim for declarations of the parties' rights and obligations under the Assumed Contracts *after* rejection of the Midstream Agency Agreement [Case No. 19-34508, Dkt. 1544-2] does not invoke that jurisdiction. The claim does not interfere with this Court's authority under the Midstream Settlement Approval Order [Case No. 19-34508, Dkt. 1415 ¶ 13] to approve any rejection, termination, or adoption of the Midstream Agency Agreement, or involve interpretation or enforcement of that order. Rather, the Reorganized Debtors are free to reject or assume the Midstream Agency Agreement, get an order from this Court approving their choice, and then face the legal and commercial consequences of that choice under the terms of the Assumed Contracts.

23. Nor does Carnero's claim for declarations under the Assumed Contracts following the June 28, 2021 rejection of the Marketing Agreement [Case No. 19-34508, Dkt. 1983] invoke such retained jurisdiction. The post-confirmation implications of the rejected Marketing

Agreement on the parties' rights and obligations under Assumed Contracts are just the sort of matter that involves contract interpretation under state law, and not implementation or execution of the Plan or any order of this Court. *See Craig's Stores*, 266 F.3d at 390 (holding that court lacked jurisdiction to hear post-confirmation cause of action for breach of assumed contract); *Austin Development*, 19 F. 3d at 1084 (holding that court lacked jurisdiction to hear post-confirmation cause of action regarding third party beneficiary's rights in rejected contract). For purposes of a post-confirmation jurisdictional analysis, there is no meaningful distinction between a post-confirmation breach of contract dispute regarding an assumed contract (as in *Craig's Stores*) or the State Court Lawsuit seeking declaratory relief of the parties' rights and obligations under the Assumed Contracts.

24. Considering the above, any dispute regarding the parties' relations under the Assumed Contracts on a post-assumption, go-forward basis simply does not impact compliance with the Plan or any Bankruptcy Court order, does not impact implementation of the Plan or enforcement of any Bankruptcy Court order, and, in fact, has no impact on the Plan or any Bankruptcy Court order whatsoever. *See In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 589 (5th Cir. 2008) (recognizing that "jurisdiction extends to matters that 'impact compliance with or completion of the reorganization plan'" and finding no jurisdiction where the litigation at issue did not attempt to subvert the confirmed plan) (citation omitted). Therefore, this Court lacks jurisdiction to hear the State Court Lawsuit and should remand it to the state court.

**II. The factors applicable to 28 U.S.C. 1334(c)(2) support mandatory abstention.**

25. The Court must abstain from hearing claims when: (1) a motion requesting abstention has been timely filed; (2) the claim is essentially premised on state law; (3) the claims have no independent basis for federal jurisdiction other than § 1334(b); (4) the claims are non-core; (5) an action has been commenced in state court; and (6) the action can be timely adjudicated

in state court. *See In re Treyson Dev., Inc.*, No. 14-70256, 2016 WL 1604347, at *21 (Bankr. S.D. Tex. Apr. 19, 2016) (Rodriguez, J.); *In re Petroleum Products & Services, Inc.*, 561 B.R. 662, 665 (Bankr. S.D. Tex. 2016) (Isgur, J.) (quoting *In re Mugica*, 362 B.R. 782, 792 (Bankr. S.D. Tex. 2007) (Isgur, J.)). The factors applied to the State Court Lawsuit support mandatory abstention.

***A. Carnero has timely filed this motion for abstention and its claim is based on state law.***

26. The first two factors are met. This motion was timely filed on or before 30 days after the Defendants filed the Notice of Removal on September 10, 2021, and satisfies factor (1). Carnero's claim for declaratory relief to interpret the Assumed Contracts is a state law claim. *See Craig's Stores*, 266 F.3d. at 390. This satisfies factor (2). These two factors support mandatory abstention.

***B. Carnero's claims have no independent basis for federal jurisdiction other than Section 1334(b).***

27. The Defendants bear the burden to show the Court has jurisdiction. *See Smith*, 605 Fed. Appx. at 313. In their Notice of Removal [Dkt. 1], the Defendants allege only 28 U.S.C. § 1334(b) as the basis for this Court's jurisdiction. The Defendants misstate Carnero's purely state law contract interpretation claim in an attempt to fit Carnero's claims within the post-confirmation "related to" jurisdiction of this Court. But as explained in Section I, in these circumstances, the Court lacks such jurisdiction. No other basis for federal jurisdiction exists. This factor supports mandatory abstention.

***C. Carnero's claims are non-core.***

28. Non-core proceedings relate to a case under title 11, but do not arise under title 11, or arise in a case under title 11. 28 U.S.C. §§ 157(b)(1); *Petroleum Products*, 561 B.R. at 665. In contrast, core proceedings invoke a substantive right provided by title 11 or by their nature, can arise only in the context of a bankruptcy case. *Petroleum Products*, 561 B.R. at 665 (citing

*Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 930 (5th Cir. 1999)). Carnero's state law contract interpretation claims relate to the Reorganized Debtors' chapter 11 case only in the sense that the Reorganized Debtors were Debtors before June 30, 2020 (the Effective Date of the Plan). They do not invoke Section 365 or any other substantive rights under the Bankruptcy Code. The State Court Lawsuit did not arise under title 11 or in a case under title 11, as Carnero filed it post-confirmation when no estate to administer exists. Further, the State Court Lawsuit does not invoke any right provided by title 11. As a garden-variety contract interpretation declaratory relief action, it could—and does—arise outside the context of a bankruptcy case. Thus, the State Court Lawsuit is a non-core proceeding. *Id*. ("A claim based on state created rights, which could have proceeded in state court had there been no bankruptcy, is likely not core…Petroleum Products' claims do not invoke a substantive right provided by Title 11 nor are they of a nature that could only arise in a bankruptcy case—they are simply state contract claims."). This factor supports mandatory abstention.

***D. Carnero filed its claims in the State Court Lawsuit.***

29. Carnero filed the State Court Lawsuit in state court on July 30, 2021. The Defendants do not dispute this. This factor supports mandatory abstention.

***E. The state court can timely adjudicate Carnero's claims.***

30. Carnero bears the burden to show that the State Court Lawsuit can be timely adjudicated in the state court. *Petroleum Products*, 561 B.R. at 666. It can carry that burden. Official court and caseload statistics for the period September 2020 through September 2021 from The Texas Office of Court Administration Court Activity Reporting and Directory System for Harris County, Texas,[3] and for the period June 2020 through June 2021 from the United States

[3] The Texas Office of Court Administration data and records are available here: https://card.txcourts.gov/.

Courts Caseload Statistics Data Tables[4] show that both the Harris County District Courts and the United States Bankruptcy Court for the Southern District of Texas continue to manage significant caseloads during this pandemic affected period. *See* **Exhibit 6**, Harris County statistics, **Exhibit 7**, US Bankruptcy Court SD TX statistics. Those same statistics show that both courts are also clearing thousands of cases each year. Statistics show the judge of the 269th Harris County Judicial District Court where the State Court Lawsuit is pending resolves cases faster than the average case resolution for all Harris County District Courts. *See* **Exhibit 8**, Gavelytics Report for J. Sepolio. Considering these data, the state court can timely adjudicate the State Court Lawsuit.[5] This factor supports mandatory abstention.

31. In sum, Carnero can establish all six factors applicable to mandatory abstention under 28 U.S.C. § 1334(c)(2). The Court should mandatorily abstain from adjudicating this adversary proceeding and remand the case to the state court.

## III. The factors applicable to 28 U.S.C. § 1334(c)(1) overwhelmingly favor permissive abstention.

32. If the Court disagrees that mandatory abstention applies, it should permissively abstain from hearing the adversary proceeding and remand the case to state court because the factors applicable to 28 U.S.C. § 1334(c)(1) heavily favor permissive abstention or remand.

### *A. The permissive abstention factors.*

33. A bankruptcy court may permissively abstain "from hearing a proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). The

[4] The United States Courts Caseload Statistics Data Tables are available here: https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

[5] *See* **Exhibit 9**, the Affidavit of Amy C. Falcon, proving up the process by which Carnero obtained the court statistics reflected in Exhibits 6-8.

bankruptcy court has "broad power to abstain whenever appropriate." *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987). The factors courts consider include:

> (a) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;
>
> (b) the extent to which state law issues predominate over bankruptcy issues;
>
> (c) the difficult or unsettled nature of applicable law;
>
> (d) the presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
>
> (e) the jurisdictional basis, if any, other than § 1334;
>
> (f) the degree of relatedness or remoteness of proceeding to main bankruptcy case;
>
> (g) the substance rather than the form of an asserted core proceeding;
>
> (h) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
>
> (i) the burden on the bankruptcy court's docket;
>
> (j) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
>
> (k) the existence of a right to a jury trial;
>
> (l) the presence in the proceeding of nondebtor parties;
>
> (m) comity; and
>
> (n) the possibility of prejudice to other parties in the action.

*In re SBMC Healthcare, LLC*, 519 B.R. 172, 190 (Bankr. S.D. Tex. 2014), *aff'd*, No. AP 14-03126, 2017 WL 2062992 (S.D. Tex. May 11, 2017). Application of these factors to this adversary proceeding favor permissive abstention.

### ***B. The balance of the factors favors permissive abstention.***

1. <u>The effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention.</u>

34. The State Court Lawsuit largely involves non-debtor parties. Only Mesquite/Maverick is a Reorganized Debtor, the other five parties are non-debtors. The outcome of the suit will not deplete or increase the estate. First, post-confirmation, no estate exists. Second, the Reorganized Debtors assumed the Assumed Contracts. The effect of the assumption on the estate was established when the contracts were assumed. Remand to the state court to declare the parties' rights and obligations under the Assumed Contracts will not change that effect. This factor favors abstention. *See In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 848 (Bankr. S.D. Tex. 2006) (Bohm, J.) (recognizing that this factor does not apply post-confirmation when no estate exists).

2. <u>The extent to which state law issues predominate over bankruptcy issues.</u>

35. The State Court Proceeding only involves state law issues—the parties' rights and obligations under the Assumed Contracts. *See Craig's Stores*, 266 F.3d at 390 (recognizing contract claims as state law claims). Carnero has not alleged claims seeking enforcement of the Plan or an order issued by this Court or requesting this Court take action on any executory contract. No bankruptcy issues arise from Carnero's declaratory relief claim. State law issues predominate over bankruptcy issues in this circumstance. This factor favors abstention. *See Doctors Hosp.*, 351 B.R. at 849 (recognizing that when proceeding includes only state law claims and no bankruptcy issues, state law claims predominate)

3. <u>The difficult or unsettled nature of applicable law.</u>

36. Carnero's declaratory relief claim is a garden-variety state law claim. The claim is premised on the Assumed Contracts and Carnero's statutory right under Tex. Civ. Prac. & Rem. Code Ch. 37 to have the state court declare the parties' rights and obligations under those contracts.

These are state law principles to which the state court is better able to respond. *See SBMC Healthcare*, 519 B.R. at 191. This factor favors abstention.

4. The presence of related proceeding commenced in state court or other nonbankruptcy proceeding.

37. Carnero filed the State Court Lawsuit in the state district court in Harris County, Texas. There are no other related state court proceedings. While there are continuing proceedings in the bankruptcy case, for the reasons set forth above, they do not implicate the claims asserted in the State Court Proceeding. This factor is likely neutral, at best, when viewed most favorably to the Defendants. *See SBMC Healthcare*, 519 B.R. at 191.

5. The jurisdictional basis, if any, other than § 1334.

38. The Defendants pleaded only Section 1334(b) as the basis for jurisdiction. As shown above, the Court lacks jurisdiction under that section. Even if the Court had jurisdiction under Section 1334(b), this is the only basis on which jurisdiction rests. The State Court Proceeding raises no federal question or complete diversity grounds for jurisdiction. This factor heavily favors abstention. *See SBMC Healthcare*, 519 B.R. at 191.

6. The degree of relatedness or remoteness of proceeding to the main bankruptcy case.

39. As discussed above, Carnero's claims are not "related to" the post-confirmation Reorganized Debtors' Chapter 11 case. Even if related, that relationship is remote. This dispute involves (1) mostly non-debtors (Mesquite/Maverick is the only Reorganized Debtor defendant); (2) events occurring after confirmation when no estate remains to be administered; and (3) exclusively non-bankruptcy issues—the parties' rights and obligations under the Assumed Contracts. At most, this dispute is remotely related to the Reorganized Debtors' Chapter 11 proceeding. This factor favors abstention. *See SBMC Healthcare*, 519 B.R. at 191.

7. The substance rather than the form of an asserted core proceeding.

40. Carnero's direct cause of action is non-core, as discussed above. Even if the claim was core, the substance of the dispute consists of a state law claim based on the rights and relationship of the parties post-confirmation under the Assumed Contracts. This factor favors abstention. *See SBMC Healthcare*, 519 B.R. at 191.

8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.

41. Carnero's direct cause of action is non-core, as discussed above. Thus, this factor does not apply. Even if Carnero's claim was core, the dispute consists of a state law claim with no bankruptcy matters that exist post-confirmation from which to sever the claims. The state court can enter and enforce an order that declares the parties' rights and obligations under the Assumed Contracts. This factor favors abstention. *See SBMC Healthcare*, 519 B.R. at 191-92.

9. The burden on the bankruptcy court's docket.

42. This Court is among the busiest bankruptcy courts in the country for complex bankruptcies such as that involving the Reorganized Debtors. While Carnero does not doubt the Court will prioritize this case, there is no question it will add strain to the Court's already taxed time and resources. *See* Ex. 7. As such, this factor favors abstention. *See SBMC Healthcare*, 519 B.R. at 192.

10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties

43. Defendants are forum shopping. They removed the State Court Lawsuit involving only a state law claim for declarations under assumed contracts that arose post-confirmation against multiple non-debtor defendants and a single Reorganized Debtor defendant. As in *Craig's Stores*, the Defendants want to run to the bankruptcy court to protect themselves from

unpleasantness that arose after the Reorganized Debtors emerged from bankruptcy. To seek shelter from the state court in the bankruptcy court, in the Notice of Removal the Defendants misstate the nature of the declaratory relief pleaded as seeking declarations “under various contracts as a matter of bankruptcy law,” “declaring the legal effect of rejection of the Marketing Agreement under 11 U.S.C. § 365,” and “that Mesquite is obligated to ‘pursu[e] rejection of the Midstream Agency Agreement under 11 U.S.C. § 365.” This is not what Carnero seeks. It seeks declarations solely under the Assumed Contracts as to the parties’ rights and obligations under those contracts. Misstating Carnero’s claim is the only way the Defendants can try to squeeze the claim into Section 1334(b) jurisdiction. As discussed above, Section 1334(b) does not authorize “related to” jurisdiction over Carnero’s post-confirmation claims under the Assumed Contracts. This factor favors abstention.

11. <u>The existence of a right to a jury trial.</u>

44. The parties waived their right to trial by jury in the Assumed Contracts. This factor weighs against abstention. *See SBMC Healthcare*, 519 B.R. at 192.

12. <u>The presence in the proceeding of nondebtor parties.</u>

45. Of the six parties involved the State Court Lawsuit, only one is a Reorganized Debtor, Mesquite/Maverick, who was more than 15 months passed confirmation of the Plan when Carnero filed the lawsuit. This factor favors abstention. *See SBMC Healthcare,* 519 B.R. at 192.

13. <u>Comity.</u>

46. Carnero had already instituted its lawsuit in Texas state court when the Defendants removed the State Court Lawsuit to this Court. This factor favors abstention. *See SBMC Healthcare*, 519 B.R. at 192.

14. <u>The possibility of prejudice to other parties in the action.</u>

47. The issue is which court, this Court or the state court, should hear Carnero's state court claim. Both forums are capable of adjudicating the claim. But the State Court Lawsuit involves no active debtors; no debtor rights require this Court's protection. At best, this factor is neutral. *See SBMC Healthcare*, 519 B.R. at 192.

48. Eleven of the 14 permissive abstention factors favor abstention. Only factor (11) the existence of a right to a jury trial favors retention. Factor (4) the presence of related proceeding commenced in state court or other nonbankruptcy proceeding and factor (14) the possibility of prejudice to other parties in the action are neutral. Because many more factors favor abstention than favor retention, permissive abstention is appropriate.

49. The Court may give greater weight to some factors. The Court should give more weight to the fact that: (a) the resolution of the Carnero's direct claim does not implicate the estate, because no estate exists post-confirmation, or the implementation or execution of the Plan (factor 1); (b) the law governing the dispute is entirely Texas state law (factor 2); (c) this Court has no subject matter jurisdiction over Carnero's direct claim, or even if it does, the only jurisdictional basis is 28 U.S.C. § 1334 (factor 5); and (d) five of the six parties in this dispute are non-debtors (factor 12). With greater weight to these factors, the Court should permissively abstain from hearing the adversary proceeding and remand the case to the Harris County District Court. *See SBMC Healthcare*, 519 B.R. at 193.

## Conclusion

Carnero's State Court Lawsuit, which alleges claims that arose post-confirmation against one Reorganized Debtor and three non-debtors, seeks only state court relief. As a result, this Court lacks post-confirmation jurisdiction under 28 U.S.C. § 1334(b) to hear this adversary proceeding and Carnero asks that it remand the case to the state court. Carnero also requests that this Court

mandatorily abstain from hearing this adversary proceeding under 28 U.S.C. § 1334(c)(2), and the factors support its request. Finally, the factors relating to permissive abstention under 28 U.S.C. § 1334(c)(1) favor this Court's permissively abstaining from hearing this adversary proceeding. Accordingly, Carnero asks the Court to remand the State Court Lawsuit to state court.

**Dated: October 8, 2021.**

Respectfully submitted,

**PORTER HEDGES LLP**

By: *__/s/ Joshua W. Wolfshohl__*
Joshua W. Wolfshohl SBN 24038592
Aaron J. Power SBN 24058058
Eugene M. Nettles SBN 14927300
Amy C. Falcon SBN 24053576
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6295
jwolfshohl@porterhedges.com
apower@porterhedges.com
enettles@porterhedges.com
afalcon@porterhedges.com

**Attorneys for Adversary Plaintiff**
**Carnero G&P, LLC**

## Certificate of Service

I hereby certify that on October 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system for the United States Bankruptcy Court for the Southern District of Texas and all counsel of record were served accordingly.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl